### FAY et al. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. April 21, 1913.)

No. 966.

1. UNITED STATES (§ 55*)—TRUST PROPERTY—USE.

Defendant's ancestor conveyed certain shore lands to trustees for the use of the United States Commission of Fish and Fisheries, and for the use of such other departments of the United States government as might from time to time during the continuance of the trust be designated by the Secretary of the Treasury, with authority, on request of the United States Commissioner of Fish and Fisheries, or of the Secretary of the Treasury, to convey the same to the United States, provided that, if the premises were not used for the purposes of the Commission of Fish and Fisheries, "nor by the United States" the same should revert to the grantor's heirs. *Held*, that the United States was not limited in the use of the land to the development of the fish and fisheries of the United States, but was entitled to devote the same to any kind of useful public purpose.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 38; Dec. Dig. § 55.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. UNITED STATES (§ 55*)—DONATED PROPERTY—POWER TO TAKE.

The United States has power to accept a grant of land as a donation or gratuity for a public purpose, to hold the property so donated, and to maintain suits for the protection of its rights therein.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 38; Dec. Dig. § 55.*]

3. UNITED STATES (§ 55*)—ACQUISITION OF PROPERTY—"USE."

Defendant's ancestor conveyed certain shore land to trustees, to hold for the use of the United States Commission of Fish and Fisheries, and for the use of such other departments of the United States government as might from time to time be designated by the Secretary of the Treasury, provided that, if the premises were not used for the purposes of the Commission nor by the United States, the same should revert to the grantor's heirs. The government maintained a fish commission station near the land, where a hatchery and a biological laboratory were erected, and the cultivation of cod, flat fish, and lobsters was carried on, together with wharves, docks, and a coalhouse. Though no buildings were erected on the property in question, public notices asserting title of the United States and warning the public against interfering with the uses of the grant were posted in 1899, and in 1893 the United States drained the land, and in 1894 negotiations were had concerning permission to maintain a float stage in waters near the land, tending to show that the government was using its right for protective purposes. *Held*, that the term "use" was used in the sense of property of a thing rendering it suitable for a purpose, adaptability to the attainment of an end, usefulness, availability, utility, serviceability, service, convenience, and position, and that the facts were sufficient to show that the United States had not forfeited its right to the land by a failure to use the same.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 38; Dec. Dig. § 55.*

For other definitions, see Words and Phrases, vol. 8, pp. 7226, 7227.]

4. DISTRICT AND PROSECUTING ATTORNEYS (§ 8*)—GOVERNMENT LAND—TITLE —ADMISSION OF UNITED STATES ATTORNEY.

The rights of the United States in certain shore land under the provisions of a trust deed could not be affected by an admission of the United States attorney in a proceeding in a state court with reference to the land, to which the United States was not a party.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 34, 35; Dec. Dig. § 8.*]

In Error to the District Court of the United States for the District of Massachusetts; Arthur L. Brown, Judge.

Writ of entry by the United States against Henry H. Fay and others. Judgment for the United States, and the tenants bring error. Affirmed.

John L. Hall, of Boston, Mass. (Edmund S. Kochersperger, of Boston, Mass., on the brief), for plaintiffs in error.

Asa P. French, U. S. Atty., of Boston, Mass. (William H. Garland, Asst. U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. We are concerned here with a writ of entry in which the United States demands possession of a certain tract

of shore land situated at Woods Hole, in Falmouth, Mass. The defendants are the heirs at law of Joseph S. Fay.

Since 1871 there has been a station of the United States Fish Commission at Woods Hole, and work incident to such an establishment has been carried forward there. At the station there has been a large residence building, which serves as summer headquarters for the Bureau of Fisheries. There is a hatchery building, which includes a biological laboratory; and the work is the cultivation of cod, flat fish, and lobsters, and the study of problems connected with the fisheries of the coast. There are wharves, docks, a coalhouse, and a reservoir. There are also at this station two regular steamers, a steam launch, small boats, and an auxiliary steamer.

[1, 2] In 1882, Joseph S. Fay, who was a wealthy man and owner of considerable land on the shore and thereabouts, conveyed to Charles F. Choate and J. Malcolm Forbes, trustees, a certain parcel of narrow shore land particularly described, which they were to hold primarily for the use of the United States Commission of Fish and Fisheries, under the general direction of the United States Commission of Fish and Fisheries, and, secondly, for the use of such other departments of the United States government as might from time to time during the continuance of the trust be designated by the Secretary of the Treasury, with authority, upon request of the United States Commissioner of Fish and Fisheries, or of the Secretary of the Treasury, to convey the same to the United States. The conveyance and trust were subject to a proviso in the following words:

"Provided, however, that if hereafter the premises hereby conveyed are not used for the purposes of the said Commission of Fish and Fisheries, nor by the United States, the same shall revert to the said Joseph S. Fay, his heirs and assigns."

A perpetual right of landing for Mr. Fay was reserved to himself and his heirs.

In 1883 the trustees conveyed the land to the United States, subject to the same proviso in respect to reversion.

The grant was a donation or gratuity, and was for a public purpose; and we have no doubt of the power of the government to receive and hold property thus donated, and to maintain suits for the protection of its rights.

It must be observed that the terms of the grant are explicit, and that the reservation is in the broadest possible language, in that it fixes no time limit in respect to nonuser operating as a reversion; and the language with respect to the kind of uses is equally broad:

"Not used for the purposes of the United States Commission of Fish and Fisheries nor by the United States of America."

[3] It was unquestionably open to the United States, under the broad language quoted, to devote the land to any kind of useful public purposes; but the government's only contention is that it has been used in connection with the fisheries station, and again here the language is very broad:

"Used for the purposes of the United States Commission of Fish and Fisheries."

204 F.—36

It does not express buildings or wharves or structures of any kind; and we think it follows that the parties contemplated any beneficial use, either for structures or incidental, auxiliary, beneficial uses.

We accept the established rule that grants of this character should be liberally construed, with a view of upholding the purpose of the grant, as well as the proposition that, upon questions of reversion or forfeiture in respect to conditions subsequent, the rule of strict construction obtains.

Under these rules of construction, the government had a fair and reasonable question for the jury upon the evidence in respect to active, substantial, beneficial uses. It is true the land has not been used for building purposes, or for permanent structures; but the uses were such practical, incidental, beneficial uses as are often applied to open land connected with public and private structures and enterprises.

At the trial considerable importance was attached to the protective features of this narrow strip of shore land as bearing upon the question whether the government had used it for the purposes of the Fish Commission establishment within the meaning of the condition; and, as explained to the jury, for the protection that was supposed to result from the fact that the ownership might be used to prevent encroachments and uses inconsistent with the purposes of a fish hatchery, like drainage, which, in connection with the currents of the harbor, might affect the propagation of fish.

Under the established rules of construction, which require liberal considerations in support of grants of this character, and strict considerations with reference to reversions and forfeitures, we see no error in permitting the protective feature of the land and its control to be considered among the other uses upon the question whether the condition was reasonably performed.

A public-spirited man, whose purpose was to promote a government work like the one in question, might well have contemplated that the ownership and control of a nearby strip of shore land would be so exercised as to operate usefully and beneficially to such a government enterprise in the interests of the general public, through protecting the waters against pollution and other conditions damaging to the general work of food fish propagation.

The fact that the narrowness of the strip rendered it not especially suitable for the erection and maintenance of structures lends force to the proposition that it was reasonably within the contemplation of the parties that its control and incidental and auxiliary uses might be beneficial to the general enterprise.

It is well understood among men that oftentimes the leading incentive for the acquisition of title to nearby lands resides in the idea of protection against drainage, surface flowage, interruption of view, and other uses which might be inconsistent with the greater success and the better enjoyment of the main or principal right.

"Used for the purposes" is a very general and sweeping expression of a general intent to promote the interests of the plant in question in all useful ways, and while the popular acceptation of the word "use" suggests the act of employing, the word "use" has another meaning.

which may properly be applied, we think, to this situation, which is the property of a thing which renders it suitable for a purpose; adaptability to the attainment of an end; usefulness; availability; utility; serviceableness; service; convenience; position.

Aside from the actual and more active incidental uses disclosed by the record, and as bearing upon the protective use through the instrumentality of ownership and control, we think the government's acts of dominion pertinent and important.

We think the position of the government, that ownership and control afforded a useful protection to the work of the Fish Commission, a sound one, and that it is reasonable to infer that the parties contemplated that ownership, accompanied with assertion of right, would operate to that end.

In May, 1883, the government, through its attorney, George P. Sanger, filed a plan of the land in question with the Secretary of the Commonwealth of Massachusetts, stating the government's title, and that the same was necessary for the use of the United States Fish and Fisheries Commission.

In 1893 it exercised drainage control over the strip of land in question.

Public notices, asserting the title of the United States and warning the public against interfering with the waters of the ground, were posted in 1899.

Negotiations were had in 1894 with respect to permission to certain parties to maintain a float stage in waters near the land in question, and there were other acts of dominion and control tending to show that the government was using its right for protective purposes.

There are numerous assignments of error, many of which were not touched upon in argument. There are many others which are inferentially disposed of by the general propositions which we have adopted for the purposes of decision.

[4] We do not deem it necessary to take up the assignments of error seriatim, and will only refer to the questions raised in respect to the admission of the United States attorney, in a certain proceeding in the state court of Massachusetts, and the effect of the result of that case upon the questions involved here.

There may be slight or technical error in some of the assignments of error; but, having considered the weight of the subject-matter involved in the incidents to which they refer, we find no sufficient ground for disturbing the verdict.

In Williamson v. United States, 207 U. S. 425, 451, 28 Sup. Ct. 163, 52 L. Ed. 278, it was reasserted that courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused. In view of this rule, we have no hesitation in saying that there is no reason to think that practical injustice resulted from any of the technical errors pointed out.

Now, as to the proceedings in the state court which were offered in this case for the purpose of showing that the defendants' possession is rightful. We think it clear in respect to that contention that ques-

tions as to the government's title could not be concluded in the proceedings in the state court to which the United States was not a party. Indeed, Chief Justice Knowlton expressly says, in the course of his opinion (Fay v. Locke, 201 Mass. 387, 390, 87 N. E. 753, 755 [131 Am. St. Rep. 402]):

"Of course, a judgment for the demandants against the tenant does not affect the title of the United States under its deed; that is open for further litigation, if there is a dispute about it."

We think it equally clear that a statement or admission by a United States attorney in a case in which the United States was not a party would not be such an authoritative admission as to make it affirmative evidence upon the question of title involved in this case.

Judgment of the District Court affirmed, with costs of this court.

PUTNAM, Circuit Judge (concurring). I am not prepared to hold that a mere acquiescence in a natural condition of the property in question that was conveyed by Mr. Fay was covered by the word "used," as found in the conditions of the deed; but it is so clear that the property has been beneficially used by the United States that any error of the District Court in this particular is wholly unimportant. Therefore I agree that the judgment should be affirmed